IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA and STATE OF CALIFORNIA, ex rel. PATRICIA PAUL WESTERFIELD,<br><br>Plaintiffs,<br><br>v.<br><br>UNIVERSITY OF SAN FRANCISCO,<br><br>Defendant. | No. C 04-03440 JSW<br><br>**ORDER GRANTING UNIVERSITY'S MOTION TO DISMISS WESTERFIELD'S FIRST AMENDED COMPLAINT** |

Now before the Court is the motion to dismiss Claimant Patricia Paul Westerfield ("Westerfield")'s First Amended Complaint ("FAC") by Defendant University of San Francisco (the "University"). Having carefully considered the parties' arguments and relevant legal authority, the Court hereby GRANTS the University's motion to dismiss.

## BACKGROUND

In February 2003, Westerfield filed a complaint in San Francisco Superior Court against the University, her former employer.[1] Westerfield subsequently filed this action against the University pursuant to the False Claims Act, 31 U.S.C. § 3729, *et seq.* ("FCA"). Westerfield alleges that the University failed to comply with the Americans with Disabilities Act ("ADA") by failing to provide reasonable accommodations for disabled students, by manipulating the data on the number of disabled students, and by rejecting applicants based on their disabilities. She

---

[1] The University's requests for judicial notice are GRANTED. *See* Fed. R. Evid. 201.

further alleges that the University falsely certified that it had complied with statutes relating to discrimination as a condition of receiving government funding.

On February 14, 2006, the Court dismissed Westerfield's FCA claim with leave to amend, and Westerfield subsequently filed an amended FCA claim. University now moves to dismiss Westerfield's amended FCA claim on several grounds. In addition to her federal FCA claim, Westerfield brings a two state law claims: a claim under the California False Claims Act, California Government Code § 12651, *et seq.*, and a claim for retaliation under California Government Code § 12653(b). The Court will address the additional specific facts as required in the analysis.

## ANALYSIS

**A.    Legal Standards on a Motion to Dismiss.**

A motion to dismiss is proper under Rule 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A motion to dismiss should not be granted unless it appears beyond a doubt that a plaintiff can show no set of facts supporting his or her claim. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *see also De La Cruz v. Tormey*, 582 F.2d 45, 48 (9th Cir. 1978). In ruling on a Rule 12(b)(6) motion, the complaint is construed in the light most favorable to the non-moving party and all material allegations in the complaint are taken to be true. *Sanders v. Kennedy*, 794 F.2d 478, 481 (9th Cir. 1986). The court, however, is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged. *Cleggy v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

Unlike a Rule 12(b)(6) motion, in moving to dismiss under Rule 12(b)(1), a party can "attack the substance of a complaint's jurisdictional allegations despite their formal sufficiency, and in so doing rely on affidavits or any other evidence properly before the court." *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989).

2

**B.     The University's Motion to Dismiss.**

    **1.     Westerfield's FCA Claim.**

The University argues that Westerfield's FCA claim should be dismissed because: (1) the Court lacks jurisdiction over her claim based on the "public disclosure" bar; (2) Westerfield failed to allege her FCA claim with sufficient particularity; and (3) her claim is barred by *res judicata.*

A private person, also known as a relator, may bring a qui tam action on behalf of the United States against a person or entity who defrauds the government. 31 U.S.C. §§ 3729, 3730(b). However, the court's jurisdiction is limited by 31 U.S.C. § 3730(e)(4), which provides: "No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions ... unless the action is brought by the Attorney General or the person bringing the action is an original source of the information." 31 U.S.C. § 3730(e)(4)(A). The statute defines an "original source" as "an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information." 31 U.S.C. § 3730(e)(4)(B). Westerfield, "as the qui tam plaintiff, bears the burden of establishing subject matter jurisdiction." *See United States v. Alcan Electrical and Engineering, Inc.*, 197 F.3d 1014, 1018 (9th Cir. 1999).

When the Court dismissed Westerfield's initial complaint, the Court determined that her FCA claim was based upon allegations or transactions that had been publicly disclosed in the course of the litigation of another action Westerfield had previously filed in state court. *See Seal 1 v. Seal A*, 255 F.3d 1154, 1159 (9th Cir. 2001) (court must determine whether at the time the FCA claim is filed, "there has been a 'public disclosure' of the 'allegations or transactions' on which the claim is based") (quoting 31 U.S.C. § 3730(e)(4)(A)). Accordingly, to bring her FCA claim, Westerfield bears the burden of establishing that she qualifies as an original source, i.e. that she (1) voluntarily disclosed the information to the government before filing her FCA claim and (2) has direct and independent knowledge of the information on which the allegations of her FCA claim are based. *See* 31 U.S.C. § 3730(e)(4)(B); *see also Seal 1*, 255 F.3d at 1162.

When the Court dismissed Westerfield's FCA claim, it noted that if she chose to amend her claim her toughest challenge was likely to be demonstrating that she had "direct" knowledge of the alleged fraud. To make such a showing, Westerfield must establish she "had firsthand knowledge of the alleged fraud, and that [s]he obtained this knowledge through [her] 'own labor unmediated by anything else.'" *Alcan Electrical and Engineering*, 197 F.3d at 1019; *see also Wang v. FMC Corp.*, 975 F.2d 1412, 1417 (9th Cir. 1992) (finding relator had "direct and independent knowledge" of the fraud because "he saw [it] with his own eyes" and his knowledge was "unmediated by anything but [his] own labor").

In addition to her obligation to demonstrate she is an original source, Westerfield must plead her FCA claim with particularity in compliance with Federal Rule of Civil Procedure 9(b) ("Rule 9(b)"). *See United States ex rel. Lee v. Beecham*, 245 F.3d 1048, 1051 (9th Cir. 2001). In the order dismissing Westerfield's original FCA claim, the Court advised Westerfield that she needed to meet the heightened pleading standard of Rule 9(b) if she chose to amend her FCA claim.

      **i.**      **Westerfield Fails to Allege Her FCA Claim With Particularity.**

In her FAC, Westerfield alleges generally that the University applies for and receives millions of dollars in state and federal funds and that in order to be eligible for such funds, the University is required to submit certifications that it complies with statutes relating to discrimination, including the Rehabilitation Act. (FAC, ¶ 27.) According to Westerfield, the University violated the Rehabilitation Act and the ADA by failing to provide reasonable accommodations for disabled students, by manipulating the data on the number of disabled students, and by rejecting applicants based on their disabilities. (*Id.*, ¶ 22.) By applying for and receiving federal funds when it was violating these statutes, she contends that the University made false claims to the government for money. (*Id.*, ¶ 27.)

"Violations of laws, rules, or regulations alone do not create a cause of action under the FCA. It is the false *certification* of compliance which creates liability when certification is a prerequisite to obtaining a government benefit." *United States ex rel. Hopper v. Anton*, 91 F.3d 1291, 1266 (9th Cir. 1996) (emphasis in original). In *Hopper*, the claimant alleged that the

4

school district submitted false claims actionable under the FCA by submitting a triennial certificate to the state department of education certifying that the district "will meet all applicable requirements of state and federal law and regulations," including compliance with the Individuals with Disabilities Act ("IDEA"). In finding the FCA claim was not sufficiently plead, the court found it significant that the IDEA does not require their funding recipients to certify their compliance with federal laws and regulations. *Id*. at 1267. The Ninth Circuit explained that merely a "breach of contract, or violation of regulations or law, or receipt of money from the government where one is not entitled to receive the money," does not state a FCA claim. Rather, "[t]he FCA is far narrower. It requires a false claim. Thus, some request for payment containing falsities made with scienter ... must exist." *Id*. at 1265. In FCA claims based on alleged false certifications, there are two major questions relating to liability: "(1) whether the false statement is the cause of the Government's providing the benefit; and (2) whether any relation exists between the subject matter of the false statement and the event triggering the Government's loss." *Id*. at 1266.

Thus, the Ninth Circuit made clear in *Hopper*, that merely alleging violations of federal statutes while receiving funds is insufficient to state a claim under the FCA. A plaintiff must allege the private individual or entity made a false certification of compliance which was a prerequisite to obtaining the government benefit. *Id*. at 1266-67. Here, Westerfield does not plead with sufficient particularity that she has direct and independent knowledge of the basis for her FCA claim. She fails to allege what fund(s) the University received, when it applied for or received such fund(s), what certification was required for such fund(s), when such certification was submitted, or who signed and submitted such certification. The most detailed information in her FAC is that she alleges applicants must sign Standard Form 424B certifying their compliance with statutes relating to discrimination, including the Rehabilitation Act, in order to received federal grants for non-construction programs from the Department of Education. (FAC, ¶ 27.) However, she does not specifically allege what federal grants the University received under non-construction programs from the Department of Education or when the University applied for such grants.

5

Later in the same paragraph in her FAC, Westerfield alleges that the University received federal grants for a program called "the Executive Masters Program in Rehabilitation Management." (*Id*.) She does not clearly allege that the Executive Masters Program in Rehabilitation Management is a non-construction program of the Department of Education for which the University must have submitted a Standard Form 424B. (*Id*.) However, even if the Court were to construe her FAC liberally to infer such an allegation, Westerfield fails sufficiently to allege when the University applied for funds under the Executive Masters Program in Rehabilitation Management, when the University submitted the alleged certification, who signed the alleged certification, when the University received funds under this program, or how much money the University allegedly received under this program. Therefore, the Court finds that Westerfield fails to meet the heightened pleading standard of Rule 9(b).

### ii. Westerfield Has Not Demonstrated that the Heightened Pleading Standard May Be Relaxed.

In her opposition to the instant motion, Westerfield concedes that she does not have direct knowledge that the University filed certifications of compliance with the ADA and the Rehabilitation Act as a condition of receiving federal grants. She explains that those certifications were not made in her office and the University controls access to such certifications. (Opp. at 6.) Westerfield argues that because the University has unique access to the requisite information regarding any certifications, the Court should relax the pleading standards for her FCA claim. However, even if the Court were able to relax the requirements under Rule 9(b) for pleading a FCA claim, Westerfield's request conflicts with her argument that she is an "original source" of the University's fraudulent conduct. *See United States ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 560 (8th Cir. 2006) (noting that claimant's argument for a relaxed pleading standard where the information concerning the alleged fraud is uniquely within the defendant's control conflicts with claimant's allegation that he is an "original source" of the alleged fraudulent conduct); *see also United States ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 230 (1st Cir. 2004) (noting that the definition of "original source," as someone who has direct and independent knowledge of the information,

6

excludes individuals who need information that is not in their possession to adequately state their FCA claim). As noted above, because the information on which Westerfield's FCA claim is based has already been publicly disclosed, she must demonstrate that she has direct and independent knowledge of the alleged fraud to demonstrate jurisdiction. 31 U.S.C. § 3730(e)(4). Without direct and independent knowledge of the details of the alleged certifications, Westerfield cannot demonstrate that she is an original source of the alleged false claims by the University.

Westerfield's reliance on *United States ex rel. Augustine v. Century Health Services, Inc.*, 289 F.3d 409 (6th Cir. 2002), *Shaw v. AAA Engineering & Drafting Inc.*, 213 F.3d 519 (10th Cir. 2000), in an attempt to evade her requirement to plead, and demonstrate direct and independent knowledge of, such detail, is misplaced. In *Augustine*, the court made detailed factual findings regarding the specific fraud perpetrated by the company, including the details regarding the substance and the timing of certifications made and how the company defrauded the government. A company submitted cost reports and cost statements claiming that the contributions it made to its Employee Stock Ownership Plan ("ESOP") were reimbursable by Medicare. *Augustine*, 289 F.3d at 412. Each cost report contained a certification that the report was a true, correct, and complete report prepared in accordance with the applicable Medicare instructions. *Id*. Although the company contributed almost $3 million to the ESOP over a two-year period, it promptly transferred all but approximately $7,000 back to the company. The district court found the company liable under the FCA for knowingly presenting false cost reports to the government to secure payment under Medicare for nonallowable expenses. *Id*. at 414. The district court relied on a theory of implied certification, finding that by submitting cost reports with certifications that the cost reports were true, correct, and complete in accordance with the applicable instructions, the company represented that it would continue to comply with the Medicare regulations governing the allowability of ESOP expenses. *Id*. at 414-15. The company argued that because the cost reports were not expressly false *at the exact time* they were submitted, it could not be held liable under the FCA. *Id*. The Sixth Circuit rejected the

7

company's argument and held that liability could attach under the FCA "if the claimant violates its continuing duty to comply with the regulations on which payment is conditioned." *Id*.

In *Shaw*, a company had a contract with the government to perform photography services. Under the contract, the company was required to comply with environmental regulations regarding silver recovery. *Shaw*, 213 F.3d at 527. The court permitted recovery pursuant to the FCA based on the company's submittal of monthly invoices for payment under the contract when the company had been violating the environmental regulations required as a condition of payment. The court held that there was "ample evidence that [the company] knowingly failed to follow the silver recovery process but nevertheless invoiced for and accepted full payment under the contract." *Id*. at 533. Even though the company did not explicitly provide a certification that it complied with the environmental statutes, by submitting invoices for payment under the contract, the court found that the company impliedly certified that it complied with the contractual requirements for payment, which included complying with the environmental regulations. This implied certification was sufficient to create liability under the FCA. *Id*. at 531-33. While the company did not provide explicit certifications regarding environmental compliance, there was evidence of the invoices requesting payment submitted on specific dates and for specific amounts, as well as evidence that at the time the invoices were submitted, the company knowingly failed to comply with the environmental regulations regarding the silver recovery process. *Id*. at 526-29, 533.

In contrast, here, Westerfield has not sufficiently alleged that the University applied for and received specific funds on a certain date which were conditioned upon compliance with the Rehabilitation Act and the ADA. Moreover, *Augustine* and *Shaw* do not assist Westerfield because she is not alleging that the University did not provide explicit certifications, but rather, that she is unaware of the details of the University's certifications.

The Court finds that Westerfield fails to demonstrate that she has direct and independent knowledge of the alleged fraud and fails to allege her FCA claim with sufficient particularity.

8

Accordingly, the Court grants the University's motion to dismiss her FCA claim.[2]

### iii. Leave To Amend Would Be Futile.

In the first order dismissing her FCA claim, the Court specifically described the defects with her FCA claim with respect to failing to plead sufficient facts to demonstrate she is an original source and to comply with Rule 9(b), and gave her an opportunity to correct these defects. In her opposition brief, Westerfield conceded that she does not have direct knowledge that the University filed certifications of compliance with the ADA and the Rehabilitation Act as a condition of receiving government funds. (Opp. at 11.) Moreover at oral argument on the motion, Westerfield made it clear that she does not have any more information from which she could allege additional facts regarding certification or of the specific funds received by the University. Thus, it appears that providing Westerfield another opportunity to amend her complaint would be futile. *See DeSoto v. Yellow Freight Sys., Inc.,* 957 F.2d 655, 658 (9th Cir. 1992). Therefore, the Court dismisses Westerfield's FCA claim with prejudice.

### 2. Westerfield's State Law Claims.

Westerfield also brings two state law claims - one under the California False Claims Act and one for retaliation. Generally, when a court dismisses all the federal claims on the merits, the court has discretion under 28 U.S.C. § 1367(c) to adjudicate the remaining state law claims. However, here, the Court has dismissed Westerfield's FCA claim for lack of subject matter jurisdiction based on her failure to show she is an original source. *See* 31 U.S.C. § 3730(e)(4). When a court dismisses the federal claims for lack of subject matter jurisdiction, it has no discretion to address the state law claims. The state law claims must be dismissed. *See Herman Family Revocable Trust v. Teddy Bear,* 254 F.3d 802, 806 (9th Cir. 2001) ("If the district court dismisses all federal claims on the merits, it has discretion under § 1367(c) to adjudicate the remaining claims; if the court dismisses for lack of subject matter jurisdiction, it has no discretion and must dismiss all claims."). Because the Court has dismissed Westerfield's FCA

---

[2] Because the Court is dismissing the FCA claim on the grounds that Westerfield has not demonstrated she is an original source and that it is not plead with sufficient particularity, the Court need not address the University's additional argument that the FCA claim is barred by *res judicata*.

9

claim for lack of subject matter jurisdiction, this Court does not have discretion to adjudicate Westerfield's state law claims and must dismiss them without prejudice to refiling in state court provided there is no statute of limitations bar.

## CONCLUSION

For the foregoing reasons, the Court GRANTS the University's motion to dismiss. Westerfield's federal FCA claim is dismissed with prejudice and her state law claims are dismissed without prejudice.

**IT IS SO ORDERED.**

Dated: October 10, 2006

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE